UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:07-CV-00152-TBR

**LIFELINE HEALTH GROUP, INC., et al.**                                  **PLAINTIFFS**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY**
**OF PITTSBURGH, PENNSYLVANIA, and**
**AIG DOMESTIC CLAIMS, INC.**                                            **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court on Defendants, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and AIG Domestic Claims, Inc.'s, Motion to Dismiss (Docket #10). The Plaintiffs, Lifeline Health Group, Inc., et al., have filed a response (Docket #11). The Defendants have filed a reply (Docket #12). This matter is now ripe for adjudication. For the reasons that follow, Defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

Lifeline Health Group, Inc., ("Lifeline") is a parent corporation operating numerous companies providing health care services. Lifeline contracted with National Union Fire Insurance to provide insurance coverage. Lifeline purchased Director and Officer and Corporate liability coverage, as well as Employment Practices Liability coverage. This is a bad faith case arising from several suits brought against the Plaintiffs in 2005 and 2006 for which the Defendants denied coverage.

On June 14, 2005, Robin Warrick filed a lawsuit in Pulaski Circuit Court naming the Plaintiffs as defendants. Warrick's complaint stated claims for intentional infliction of emotional distress, prohibited employment practices, an unsafe work environment, and battery. The claimed physical and sexual assault was committed by an unrelated third-party, Rick Bell, the father of one

of Lifeline's clients. Warrick was assaulted while performing in home respiratory care for Jennifer Bell. Rick Bell was not an employee, agent or client of the insured. Warrick's claims were premised upon her belief that Lifeline knew or should have known of similar conduct by Mr. Bell against other lifeline employees. The Plaintiffs notified the Defendants of the case, however, on August 8, 2005, the Defendants denied coverage and a default judgment was entered against Plaintiffs.

On August 9, 2005, Sheryl Heyniger filed a lawsuit against the Plaintiffs in the United States District Court in the Western District of Kentucky at Bowling Green. The Defendants' denied coverage on April 13, 2006. On October 25, 2005, Eva Marie Schroeder filed a class action in the United States District Court in the Western District of Kentucky at Bowling Green. The Defendants' denied coverage on April 13, 2006. On November 30, 2005, Peggy Appling filed a class action suit against the Plaintiffs in the United States District Court in the Western District of Kentucky at Bowling Green. The Defendants' denied coverage on April 13, 2006.

Each of these claims arose as the result of a failed healthcare plan put into effect in the calendar year of 2004. Each of the plaintiffs in these underlying claims alleged unpaid healthcare bills which should have been covered by the healthcare plan. Lifeline contracted with Energy Financial Services, LLC; Energy Insurance Agency, Inc.; and their principals, Dave Baumgartner and Jeff McIntosh to provide the healthcare plan. Lifeline states that it made all payments but later learned the desired insurance coverage had not been obtained at all or maintained by appropriate application of Lifeline's money to premiums.

On May 23, 2006, Energy Insurance Agency, Inc.; Jeff McIntosh; Dave Baumgartner; and Energy Financial Services, LLC, (collectively hereinafter "Energy Parties") filed claims against James M. Frazer, individually and in his capacity as President and General Counsel for the Plaintiffs;

2

against James T. Wilson, individually and in his capacity as Chairman of the Board of Plaintiffs; and Debra Manning, individually and in her capacity as Vice President for Human Resources for Plaintiffs. These claims alleged the Plaintiffs breached their duty to investigate the quality and administration of the healthcare plan and to monitor the healthcare plan. This complaint also alleged the Plaintiffs acted negligently in investigating the quality of the plan, in monitoring the administration of the plan and monitoring the implementation and execution of the plan. On July 13, 2006, the Defendants' denied coverage of this claim as well.

The Plaintiffs brought this cause of action against the Defendants alleging breach of insurance contract in each of the above mentioned cases against the Plaintiffs, as well as alleging the Defendants acted in bad faith in denying coverage, violated the Unfair Claims Settlement Practices Act and breached the Plaintiffs' reasonable expectation that the policies of insurance would cover the causes of action against the Plaintiffs. The Defendants move for dismissal of the Complaint for failure to state a claim on which relief can be granted. They alleged that the exclusions in the insurance policy apply, therefore there was no obligation to pay and no bad faith.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 1965 (internal citation and quotation marks omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.* at 1965. Additionally, "the conclusory nature of particular allegations cannot alone justify dismissing a complaint." *Back v. Hall*, 537 F.3d 552, 558 (6th Cir. 2008) (dismissal not appropriate although one essential element of the claim was pled in a conclusory manner).

## DISCUSSION

In order to establish a claim of bad faith under Kentucky law,

> [a]n insured must prove three elements . . . : (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer v. Jones*, 864 S.W.2d 885, (Ky.1993). Thus, in order to state a claim on which relief can be granted, the complaint before the court must establish that the plaintiff will be able to meet these three elements. In this case, there is an issue whether or not the insurer is obligated to pay the claim under the terms of the policy.

In order to determine coverage the Court must interpret the language of the insurance policies at issue, specifically the exclusions listed in these policies. These policies have been attached to the Amended Complaint as exhibits, therefore, reference to these documents by the Court and parties does not covert this motion to dismiss into a motion for summary judgment. *Greenberg*

4

*v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).  In *Eyler v. Nationwide Mut. Fire Ins. Co.*, the Kentucky Supreme Court explained:

> as to the manner of construction of insurance policies, Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured. Exceptions and exclusions are to be strictly construed so as to render the insurance effective. Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured. And since the policy is drafted in all details by the insurance company, it must be held strictly accountable for the language used.

824 S.W.2d 855, 859 (Ky.1992) (citations omitted). Applying Kentucky law, the Sixth Circuit in *Peoples Bank & Trust Company of Madison County v. Aetna Casualty & Surety Company*, held that

> the canons are to be applied when the language of the insurance contract is ambiguous or self-contradictory. Otherwise, the contract is to be read according to its plain meaning, its true character and purpose, and the intent of the policies. The canons cited . . . are rules for determining the meaning of murky words and structure in the policy . . . .

113 F.3d 629, 636 (6th Cir. 1997). Additionally, Kentucky courts have held that insurance "[p]olicies should be interpreted according to the parties' mutual understanding at the time they entered into the contract and '[s]uch mutual intention is to be deduced, if possible, from the language of the contract alone.'" *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131-32 (citing *Simpsonville Wrecker Service, Inc. v. Empire Fire and Marine Insurance Company*, 793 S.W.2d 825, 828-829 (Ky. 1990)).

The Defendants assert that the language of the insurance policy exclusions is clear and unambiguous.  The Plaintiffs do not argue that the language of the policies or the exclusions are ambiguous, only that the exclusions listed in the general terms and conditions of the policy are not applicable to the specific Director and Officer and Employment Practices coverage purchased.  The Court finds that the language of the policy exclusions is clear and unambiguous.  The Court will thus

look to the plain meaning and intent of the parties in applying the policy to the claims at issue. Additionally, the Court finds that the exclusions listed in the general terms and conditions of the policy are applicable to all specific coverage purchased under the policy, including the Director and Officer and Employment Practices coverage. The policy provides

> [t]hese General Terms and Conditions shall be applicable to all Coverage Sections, unless otherwise stated to the contrary. The terms and conditions of each Coverage Section shall only apply to that particular Coverage Section and shall in no way be construed to apply to any other Coverage Section of this policy.

Looking to the plain meaning of the language, the parties intended that any of the Terms and Conditions, including any exclusions listed therein, would be applicable to all Coverage Sections, including the Director and Officer coverage as well as the Employment Practices coverage, unless otherwise stated to the contrary. Based on this language it is irrelevant that the individual Coverage Sections did not reference the exclusions contained in the General Terms and Conditions section, nor does the listing of other exclusions specific to those Coverage Sections negate the applicability of the exclusions in the General Terms and Conditions. Additionally, the doctrine of reasonable expectations, as asserted by the Plaintiffs, is not applicable in this case because the language of the policy is unambiguous. *Hendrix v. Fireman's Fund Ins. Co.*, 823 S.W.2d 937, 938 (Ky.App.1991)

### I. Warrick's Claim against the Plaintiffs

In Count II of the Plaintiffs' Amended Complaint, the Plaintiffs reference a lawsuit against them filed by Warrick. In her state court compliant, Warrick alleged intentional infliction of emotional distress, prohibited employment practices, an unsafe work environment, and battery. These claims resulted after Warrick was physically and sexually assaulted while performing services in the home of a Lifeline client. The exclusion at issue states: "[t]he Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an insured . . . alleging, arising

6

out of, based upon, attributable to, or in any way involving, directly or indirectly, bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, that this exclusion shall not apply to Securities Claims." The Defendants assert that the language of the exclusion is applicable to this case against the Plaintiffs. The Plaintiffs argue that the claims by Warrick were not bodily injuries claims, but claims covered under the Director and Officer and Employment Practices policies. The Plaintiffs reason that, under Kentucky law, the Court should look to the actions of the insured and the claims against the insured, not the underlying facts, to determine if the exclusion is applicable; therefore, in this case, Warrick's claims are not bodily injury but employment practices because the bodily injury was caused by a tortious third-party.

The Plaintiffs cite to *Westfield Insurance Company v. Tech Dry, Inc*, where the court held it would "'look to the actions of the insured and not the perpetrator of the intentional act in determining whether there is coverage.'" 336 F.3d 503, 510 (6th Cir. 2003) (citations omitted). This case involved a claim of negligent hiring and the issue in the case revolved around the word "occurrence" and whether hiring was intentional or accidental. *Id.* at 508-510. The case at bar turns on the language of the policy, whether the claim arose out of a bodily injury, but not whether the act was intentional or accidental.

The Plaintiffs also cite *Kentucky School Boards Insurance Trust v. Board of Education of Woodford County* for the proposition that the Court should look not to the actions of the tortious third-party, but the insured to determine the nature of the claim against the insured. 2003 WL 22520018, No. 2002-CA-001748 (Ky.App. Nov. 7, 2003). In *KSBIT*, the court found that it was proper to focus on the nature of the allegations rather than the underlying facts asserted. *Id.* at *7.

7

The court went on to cite *Eyler v. Nationwide Mut'l Fire Ins. Co*, 824 S.W.2d 855 (Ky. 1992), for the principal that the phrase "arising out of" requires a direct causal connection; "a need for a direct consequence or responsible condition." *Id.*

More recently, in *Hugenberg v. West American Insurance Company/Ohio Casualty Group*, the Kentucky Court of Appeals held that the phrase "arising out of" is interpreted broadly:

> the words 'arising out of . . . use' in an . . . insurance policy, are broad, general and comprehensive terms meaning 'originating from,' or 'having its origin in,' 'growing out of' or 'flowing from' . . . All that is required to come within the meaning of the words 'arising out of the . . . use of the automobile' is a causal connection with the accident.

249 S.W.3d 174, 186 (Ky. App. 2006) (quoting *Insurance Co. of North America v. Royal Indemnity Co.*, 429 F.2d 1014, 1017-18 (6th Cir. 1970). In *Hugenberg*, the parents of Mikael were sued by Brad's parents on several grounds, including negligent supervision. *Id.* at 180-81. Mikael, who was driving another's vehicle while Brad was a passenger, struck a tree severely injuring Brad. *Id.* at 179. The court, looking to the underlying facts, reasoned

> [t]he negligent supervision claim against the Hugenbergs is based on the bodily injury suffered by Brad . . . . If not for Mikael's losing control of the car and injuring his passenger, Brad, there could be no claim for negligent supervision against the Hugenbergs . . . . The negligent supervision claims is based upon Brad's injuries, and Brad's injuries were caused by Mikael's use of Dauwe's car. This satisfies the causal connection between the use of the motor vehicle and the negligent supervision claim, which is required by the 'arising out of' language in the motor vehicle exclusion.

*Id.* at 187. The courts in *KSBIT* and *Hugenberg* each applied a different standard to determine whether the exclusion applied: alleged claims and actions of the insured versus underlying facts of the claims. Kentucky courts have held that the more recent decision is the precedent which should be followed when decisions conflict. *Smith v. Overstreet's Adm'r*, 81 S.W.2d 571, 572 (Ky. 1935). *Hugenberg* is the more recent decision and is also a published opinion and therefore should be

applied to the case at bar. Furthermore, due to the language at issue in the policy at bar, it appears the *Hugenberg* decision is more applicable to this case than the decision in *Westfield*.

The Plaintiffs further assert that the doctrine of reasonable expectations requires the Court find coverage under the policy. However, the doctrine of reasonable expectations is only applicable where the language of the policy is ambiguous. *Hendrix v. Fireman's Fund Ins. Co.*, 823 S.W.2d 937, 938 (Ky.App.1991). In this case, the Court finds the language of the policy is clear.

Insurance policy exclusions are to be construed narrowly in favor of the insured. In this case, the language of the policy is clear and unambiguous. Applying the standard set forth in *Hugenberg*, looking to the underlying facts of the claims against the insured, it appears that the claim by Warrick against the Plaintiffs is based on her injuries suffered as the result of her physical and sexual assault by a third-party. Her claims, therefore, necessarily arise out of her bodily injury: but for her bodily injury at the hands of the third-party she would have no claim against the Plaintiffs. Applying the *Hugenberg* standard also best preserves the plain meaning of the language of the policy. The Court finds the bodily injury exclusion is applicable to this claim.

**II. The Claims of Heyniger, Schroeder and Appling**

Counts III, IV, and V of the Plaintiffs' Amended Complaint refer to the actions, individual and class, filed against the Plaintiffs by employees whose medical bills were not paid by the Plaintiffs due to failure of the healthcare plan. Heyniger in her Complaint alleges "breach of the terms and conditions of the subject Employee Welfare Benefit Plan . . . and the refusal to pay is a violation of 29 U.S.C. 1001, et seq., and any regulations promulgated thereunder." She goes on to request "any and all remedies and benefits that may be available to her under the Employee Retirement Income Security Act of 1974 . . . ." Schroeder in her Complaint alleges the Plaintiffs

"failed and refused to fund the Plan [and] [c]onsequently, . . . breached their statutory and fiduciary duties to the Plan participants and beneficiaries . . . " in violation of ERISA.  Similarly, in her Complaint, Appling states she is "seeking to recover all benefits left unpaid by Lifeline in violation of . . . the Employee Retirement Income Security Act . . . and any regulations promulgated thereunder."  Appling alleges the Plaintiffs "have failed and/or refused to process and pay the benefits to which [Appling is] entitled which constitutes a breach of the terms and conditions of the Plan and is in violation of ERISA and any regulations promulgated thereunder."

### a. ERISA Exclusion

The exclusion at issue in these claims states: "[t]he Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an insured . . . for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, . . . any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, local or foreign statutory law or common law . . . . " The Defendants assert that the ERISA exclusion applies to each of these cases so that coverage is not provided. The Plaintiffs argue that the exclusion is not applicable because the Plaintiffs are not within the statutory definition of ERISA to have violated the Act.

Similarly to the situation in the Warrick instance, this issue must be resolved by determining the basis of the case for interpretation of the policy: underlying facts or allegations against the insured. The Defendants cited *Cape Coral medical Center, Inc. v. American Continental Ins. Co.*, for the proposition that coverage will not exist for any claim based on ERISA if there is such an exclusion.  2000 WL 151275, No 98-230-CIV, *2-3 (M.D.Fla. Feb. 4, 2000).  In *Cape Coral*, the court explained

> Cape Coral cannot show that even one possible claim falls within the policy's ambit. In each complaint against Cape Coral, every claim is explicitly made under ERISA and thus falls within the exclusion. No language of any of the complaints against Cape Coral could be construed to raise claims based upon Florida law.

*Id.* at *3. The court held the claims were all based on the pension plan and thus all subject to ERISA which preempted any state law claim. *Id.*

In determining whether dismissal for failure to state a claim is proper, the court must look to the plaintiff's complaint and construe it liberally in favor of the plaintiff. As to these Counts of the Plaintiffs' Amended Complaint, the Plaintiffs have failed to state a claim on which relief can be granted. The individual complaints attached to the Amended Complaint each expressly allege a violation of the responsibilities, obligations or duties imposed by ERISA. Therefore, any loss sustained would be a loss for a violation of the responsibilities, obligations or duties imposed by ERISA. Additionally, there are no facts asserted by the Plaintiffs which might be liberally construed so that the Court might find that the Plaintiffs are not bound by the responsibilities, obligations or duties imposed by ERISA. The Third-Party Complaint of the Plaintiffs against the Energy parties was not attached to the Plaintiffs' Amended Complaint. The Court, looking only at the information provided in the Amended Complaint cannot find that the Plaintiffs have any possibility of establishing the claims in Counts III, IV, and V are not excluded from coverage based on the ERISA exclusion.

While the Plaintiffs in their response state they were not the fiduciaries or administrators of the plan for the purposes of ERISA, so they could not have violated ERISA, that argument is not supported by any facts, only conclusions. Perhaps further briefing as to this issue would be helpful; however, such briefing is unnecessary since the Court finds the claim dismissed under the failure to maintain insurance exclusion. *Infra*. In support of the allegations argued by the underlying

plaintiffs in each case is violation of ERISA duties. While Plaintiffs' argument that they were not fiduciaries or administrators of the plan for purposes of ERISA may be a defense, it does not change the fact that the underlying allegation is a violation of ERISA.

### b. Failure to Maintain Insurance Exclusion

The Defendants argue that even if coverage is not excluded by the ERISA exclusion, it is excluded by the failure to maintain insurance exclusion.  The first policy, in effect November 1, 2004, to November 1, 2005,  has an exclusion of general applicability which states:

> it is hereby understood and agreed that the Insurer shall not be liable for any Loss in connection with any Claim(s) made against an Insured alleging, arising out of, based upon, attributable to, or in any way directly or indirectly relating to any failure or omission on the part of the Insureds or the Organization to effect and/or maintain adequate insurance.

The second policy, in effect November 1, 2005, to November 1, 2006, has a similar policy; however it is applicable to the Director and Officer Coverage Section only.  This second policy is applicable to the Appling and Energy parties claims only. The policy defines a wrongful act for which coverage is allowed as

> any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act: (1) with respect to any Director, Officer or Employee of the Company, by such Director, Officer or Employee in his or her capacity as such or any matter claimed against such Director, Officer or Employee solely by reason of his or her status as such . . . .

Looking at the plain meaning of the policy, the claims alleged by Appling appear to be wrongful acts as defined in the policy for Director and Officer Coverage.  Therefore, this exclusion would be applicable.

The Plaintiffs argue that this exclusion is not applicable because the underlying plaintiffs did not allege that Lifeline did not effect or maintain adequate medical insurance for its employees.

12

However, Appling's Complaint states "[t]he Defendants have failed or refused to fund the Plan fully and/or properly." This is an express allegation of failure to maintain adequate medical insurance. Similarly, the Schroeder Complaint states "during the calendar year 2004 Defendants failed and refused to fund the Plan."

As already stated by the Court, Kentucky law interprets the language "arising out of" very broadly. *Hugenberg*, 249 S.W.3d at 186 (quoting *Insurance Co. of North America v. Royal Indemnity Co.*, 429 F.2d 1014, 1017-18 (6th Cir. 1970)). Applying the standard in *Hugenberg* and looking to the underlying facts, the cases against the Plaintiffs referenced in Counts III, IV, and V all arose from failure of the healthcare plan purchased from the Energy parties. Therefore, the claims made against the Plaintiffs allege, arise out of, are based upon, attributable to, or directly or indirectly related to a failure or omission on the part of the Plaintiffs to effect and/or maintain adequate insurance. But for the allegation of Plaintiffs failure to maintain health insurance, the underlying plaintiffs would have had no claim against them. This exclusion is applicable to these claims so that there is no coverage. Even if the Court were to find that these Counts were not dismissed for failure of coverage based on the ERISA exclusion, dismissal of these claims is proper under the failure to maintain insurance exclusion. Counts III, IV, and V of the Plaintiffs' Amended Complaint are dismissed with prejudice.

**III. Claims of Energy Insurance Agency, Inc.; Jeff McIntosh; Dave Baumgartner; and Energy Financial Services, LLC**

Count VI of the Plaintiffs' Amended Complaint refers to the action of Energy Insurance Agency, Inc.; Jeff McIntosh; Dave Baumgartner; and Energy Financial Services, LLC, against J.T. Wilson, James Frazer, and Debra Manning (formerly Minton) in their individual capacity and as

13

directors and officers of Lifeline. The Energy parties alleged violations of ERISA. They further allege in their complaint that Wilson, Frazer and Manning had "a duty to investigate the quality of a health care plan . . . to investigate the administration of the Plan, and to monitor the execution of the Plan." Additionally, they allege Wilson, Frazer and Manning acted "negligently in investigating the quality of the Plan, in monitoring the administration of the Plan, and in monitoring the implementation and execution of the Plan."

### a. ERISA Exclusion

The exclusion at issue in these claims states: [t]he Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an insured . . . for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, . . . any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, local or foreign statutory law or common law . . . . " The Defendants assert that the ERISA exclusion applies because any state claim, e.g., negligence, is preempted by the ERISA claim so that coverage is not provided. The Plaintiffs argue that the exclusion is not applicable because the claim against the insured resounds in negligence rather than under ERISA.

In the case at bar, the Plaintiffs contend that the claims against them for negligence are not preempted by ERISA and are therefore not within the exclusion. However, the standard is not the nature of the allegation asserted against the Plaintiffs, but the underlying facts as was set forth in *Hugenberg*. 249 S.W.3d at 187. The underlying facts related to this case are directly related to a violation of the responsibilities, obligations or duties imposed by ERISA. However, this exclusion does not contain the same broad language as the bodily injury exclusion. The claims need not only

arise out of the underlying facts, but the loss must be for a violation of the responsibilities, obligations or duties imposed by ERISA. The claims raised by the Energy parties, while arising out of an ERISA violation, would not result in a loss for violation of the responsibilities, obligations or duties imposed by ERISA; any damages received would be for the negligence of the Plaintiffs rather than violation of ERISA. The Court finds that, as to this claim, coverage is not denied based on this exclusion.

### b. Failure to Maintain Insurance Exclusion

The Defendants argue that even if coverage is not excluded by the ERISA exclusion, it is excluded by the failure to maintain insurance exclusion. The second policy, in effect November 1, 2005, to November 1, 2006, has an exclusion of general applicability which states :

> it is hereby understood and agreed that the Insurer shall not be liable for any Loss in connection with any Claim(s) made against an Insured alleging, arising out of, based upon, attributable to, or in any way directly or indirectly relating to any failure or omission on the part of the Insureds or the Organization to effect and/or maintain adequate insurance.

However this policy is only applicable to the Director and Officer Coverage Section. This second policy is applicable to the Energy parties claims. The policy defines a wrongful act for which coverage is allowed as

> any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act: (1) with respect to any Director, Officer or Employee of the Company, by such Director, Officer or Employee in his or her capacity as such or any matter claimed against such Director, Officer or Employee solely by reason of his or her status as such . . . .

Looking at the plain meaning of the policy, the claims alleged by the Energy parties appear to be wrongful acts as defined in the policy for Director and Officer Coverage. Therefore, this exclusion would be applicable.

The Plaintiffs argue that this exclusion is not applicable because the underlying plaintiffs did not allege that Lifeline did not effect or maintain adequate medical insurance for its employees. While the Energy parties in their Third-Party Complaint did not explicitly say their claim arises from failure of the Plaintiffs to maintain adequate insurance, their claim that the Plaintiffs negligently investigated the quality of the Plan, monitored the administration of the Plan, and monitored the implementation and execution of the Plan points to the failure of the Plaintiffs to effect and maintain adequate insurance.

As already stated by the Court, Kentucky law interprets the language "arising out of" very broadly. *Hugenberg*, 249 S.W.3d at 186 (quoting *Insurance Co. of North America v. Royal Indemnity Co.*, 429 F.2d 1014, 1017-18 (6th Cir. 1970)). Applying the standard in *Hugenberg* and looking to the underlying facts, the case against the Plaintiffs referenced in Count VI arose from failure of the healthcare plan purchased from the Energy parties. Therefore, the claims made against the Plaintiffs allege, arise out of, are based upon, attributable to, or directly or indirectly related to a failure or omission on the part of the Plaintiffs to effect and/or maintain adequate insurance. But for the Plaintiffs failure to maintain health insurance, the underlying plaintiffs would have had no claim against them. This exclusion is applicable to these claims so that there is no coverage. Dismissal of these claims is proper under the failure to maintain insurance exclusion. Count VI is dismissed with prejudice.

### VI. Lifeline's Other Claims

Count VII of the Plaintiffs' Amended Complaint alleges the acts of the Defendants were "erroneous, in violation of [their] duties and obligations, reckless, grossly negligent, and/or negligent"; Count VIII alleges violation of the Unfair Claims Settlement Practices Act; Count IX

alleges bad faith; and Count X alleges the Plaintiffs had a reasonable expectation that the policies would cover the cases asserted against them. The Defendants assert that because these claims are derivative of the claims regarding coverage, for which coverage is not provided, they should be dismissed. Specifically, the Defendants state there was no duty owed on their part and therefore no duty breached and no negligence claim; there is no coverage therefore there can be no bad faith or Unfair Claims Settlement Practices Act claims; and the reasonable expectation doctrine does not provide an independent cause of action. The Plaintiffs' assertions on this point are premised on coverage having been proper.

The Court has found that all claims asserted against the Defendants in Counts II through VI are dismissed with prejudice. The Plaintiffs claims in Counts VII through X are derivative of those dismissed claims and therefore must be dismissed as well. Counts VII though X are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons the Defendants' Motion to Dismiss is GRANTED. All claims against the Defendants are dismissed with prejudice for failure to state a claim.

An appropriate order shall issue.